UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHI L. WILLIAMS,<br><br>    Plaintiff,<br><br>        v.<br><br>DAN STAKE, *et al.*,<br><br>    Defendants. | Civil Action No. 14-1210 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Kathi L. Willams worked as a Business Development Manager at Defendant Signal Financial Federal Credit Union until she resigned in early 2012 after being demoted. Believing that such demotion was the result of improper age discrimination – she was 52 at the time – Williams brought this action under the Age Discrimination in Employment Act against Signal and several of its officers. Defendants now move to dismiss, arguing principally that Plaintiff has missed her filing deadline under the ADEA. Concluding that she did timely file, the Court will deny the Motion in part, but grant it as to the individual Defendants, who are not subject to ADEA liability.

**I.    Background**

According to Plaintiff's Amended Complaint, which the Court must credit as true at this juncture, Williams was initially hired by Signal as a Business Development Coordinator in 2006. See Am. Compl., ¶ 12. In May 2008, she was promoted to Manager of the Business Development Department. See id., ¶ 13. Several years later, on January 25, 2012, the company announced the elimination of this department, see id., ¶ 19, and Williams was told the next day

1

that she could either work as a branch manager or leave the company.  See id., ¶ 21.  She resigned on January 30, "rather than be demoted to the branch manager position."  Id., ¶ 22.

Williams, who was 52 years old in early 2012, see id., ¶ 4, alleges that her demotion constituted age discrimination inasmuch as the corporate reorganization "adversely affected a disproportionate number of individuals over age 50."  Id., ¶ 26.  More directly, she claims that her job duties were renamed and given to JoAnna Mason, another employee, solely because Mason was younger – 42 years old at the time.  See id., ¶¶ 11, 22.  Williams alleges that she was more qualified than Mason since she had more banking experience, had served a longer tenure at Signal, and had closed a significantly higher dollar amount in loans.  See id., ¶¶ 7-9.

Plaintiff's sole claim is for a violation of the ADEA, and she seeks front and back pay.  She names as Defendants both Signal and the following three officers: Chief Executive Officer Dan Stake, Chief Operating Officer Terry Powers, and Senior Vice President Guy Tegler.

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and she must thus be given every favorable inference that may be drawn from the allegations of fact.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997). As Plaintiff's EEOC Charge and the EEOC's Dismissal and Notice of Rights are relied on by both sides, the Court may properly take judicial notice of them without converting this Motion to Dismiss into one for summary judgment.

### III. Analysis

In moving to dismiss, Defendants offer three potential avenues: 1) The suit was untimely filed; 2) The individual officers are not proper Defendants; and 3) Plaintiff has failed to make out a *prima facie* case against Signal. The Court addresses each separately.

A. Timeliness

To analyze the validity of Defendants' timeliness argument, some further background is required. Plaintiff filed her age-discrimination charge with the D.C. Office of Human Rights on February 17, 2012. See Mot., Exh. A (Charge of Discrimination). On March 27, 2014, the U.S. Equal Employment Opportunity Commission dismissed the complaint and informed Williams that she must file suit within 90 days of her receipt of that notice. See Mot., Exh. B (Dismissal and Notice of Rights). As Plaintiff never specifies exactly when she received this document, the Court applies the "mailbox rule" to presume that receipt occurred within three days of mailing. See Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1 (1984); Fed. R. Civ. P. 6(d). The 90th day after March 30, 2014, is June 28, which is a Saturday, so June 30, a Monday, operates as the due date. See Fed. R. Civ. P. 6(a)(1)(C). The question, therefore, is whether Williams filed this suit by June 30, 2014. Defendants argue that she plainly did not since the docket shows a filing date of July 18, 2014.

Looks, we are told, can be deceiving, and the procedural background here proves up the aphorism. It turns out that Plaintiff did originally submit her Complaint for filing on June 25, 2014, easily within the deadline. See Opp., Exh. A at 1 (Complaint with date stamp). There were no facial deficiencies on the Complaint itself, but Williams had neglected to fully fill out her *in forma pauperis* application. The court, accordingly, returned the IFP application on June 27, 2014, requiring her to check the remaining boxes. See id. at 3 (Order re: incomplete IFP application). Williams did so and resubmitted it on July 3. See id. at 1-2 (Complaint & IFP application with date stamps). An IFP complaint is not formally docketed, however, until the court grants the application and a civil case number is assigned. That is what eventually occurred on July 18. See Fiat Order of July 18, 2014.

4

As there is no question that Plaintiff's July 3 filing was complete, the delay between that date and the formal granting of the IFP application on July 18 is irrelevant. The only issue is whether the Court should consider the Complaint as being filed on June 25 (within the 90 days) or on July 3 (outside the 90 days). It turns out that this is not an either-or question, however, because it ignores the possibility of tolling. Many courts, in fact, have held that the 90-day EEOC limitations period is tolled pending court review of an IFP application. See, e.g., Ruiz v. Vilsack, 763 F. Supp. 2d 168, 172 (D.D.C. 2011) ("[T]he filing of a complaint along with an IFP application . . . tolls the ninety-day period of limitations contained in the right to sue letter during the Court's review of the IFP application.") (citation and internal quotation marks omitted); Okereh v. Winter, 600 F. Supp. 2d 139, 142 (D.D.C. 2009) (finding that courts toll the statutory period in "extraordinary circumstances," such as when a court is reviewing an IFP application), rev'd on other grounds sub nom. Okereh v. Mabus, 625 F.3d 21 (D.C. Cir. 2010).

There has been some dispute as to whether the tolling extends until a _ruling_ on the IFP application or a plaintiff's _notice_ of such ruling. See Ruiz, 763 F. Supp. 2d at 172 ("Courts have not been entirely consistent as to whether the statute of limitations is equitably tolled only from the time that the IFP application is filed until the time that the Court rules on the application, or whether it remains tolled until the plaintiff receives notice of the Court's decision."); Amiri v. Stoladi Prop. Grp., 407 F. Supp. 2d 119, 124 (D.D.C. 2005) (explaining that tolling continues until "the time the Court _rules_ on the application") (emphasis added); Washington v. White, 231 F. Supp. 2d 71, 75 (D.D.C. 2002) (same); Okereh, 600 F. Supp. 2d at 142 ("[e]quitable tolling applies between the day [the plaintiff] filed his IFP application . . . and the day he _received_ the Court's denial") (emphasis added); Williams-Guice v. Board of Education of City of Chicago, 45 F.3d 161, 165 (7th Cir. 1995) (acknowledging possibility that "the time remains in suspension

for a reasonable time . . . after the district court's order" denying the IFP application, but declining to decide the tolling end date, since the plaintiff's complaint was untimely under any possible date).

The Court believes that the wiser view permits time for notice since a plaintiff cannot know to act until she learns of a court's decision. In this case, then, tolling for IFP review plus mail delivery strikes the appropriate balance. To be more specific, tolling two days for the Court's ruling (June 25 to June 27) in addition to three days for mailing (June 27 to June 30) equals a five-day extension.[1] Since Plaintiff refiled her Complaint with a complete IFP application on July 3, only three days past the original deadline, she has complied if the five-day extension is considered. The Court, consequently, will not find the Complaint time barred. See Nkengfack v. American Ass'n of Retired Persons, 818 F. Supp. 2d 178, 181 (D.D.C. 2011) (finding reasonable period to permit receipt of notice appropriate and thus holding that plaintiff's complaint was timely filed).

B. Individual Defendants

Defendants fare better on their next argument – namely, that the individual officers should be dismissed from the case. Although the D.C. Circuit has not weighed in on this question, "[c]ourts generally have held that 'there is no individual liability under . . . the ADEA.'" Miller v. Gray, 2014 WL 2932531, at *3 (D.D.C. June 30, 2014) (quoting Bilal-Edwards v. UPO, 2013 WL 7389440, at *12 (D.D.C. Feb. 21, 2013)); see also, e.g., Parikh v. UPS, 491 Fed. Appx. 303, 308 (3d Cir. 2012) (same); Jones v. Sternheimer, 387 Fed. Appx. 366, 368 (4th Cir. 2010) (same).

The Court will thus dismiss the individual Defendants from the suit.

---

[1] Even though the Court employs a three-day period for mail here, other courts have used a five-day period. See Ruiz, 763 F. Supp. 2d at 171 (discussing distinction). As Plaintiff prevails even using the shorter period, the Court need not discuss it further.

    C.  *Prima Facie* Case

Defendants last assert in cursory fashion that Signal should also be dismissed because Williams's Amended Complaint fails to make out a *prima facie* case against it. Our Circuit has explained: "To establish a *prima facie* case under the ADEA, . . . the plaintiff must demonstrate that (1) she is a member of the protected class (*i.e.*, over 40 years of age); (2) she was qualified for the position . . . ; (3) she [suffered an adverse action]; and (4) she was disadvantaged in favor of a younger person." Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1155 (D.C. Cir. 2004) (citations omitted). In addition, "the Supreme Court [has] held that an ADEA plaintiff need not demonstrate that she was disadvantaged in favor of a person outside the protected class, *i.e.* younger than 40. . . . [E]vidence that the plaintiff was disadvantaged in favor of a 'substantially younger' person – regardless of whether that person was under 40 years of age – would be a basis from which to infer age discrimination." Id. (citation and internal citation omitted; emphasis added).

Williams here has sufficiently alleged each element: she was 52, she was qualified, she was demoted, and a substantially younger person replaced her. Defendants, moreover, do not even argue that her 42-year-old replacement was not substantially younger, although that could present an interesting question. See, e.g., Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000) ("to satisfy the 'substantially younger' requirement, the relevant individual must be at least ten years younger than the plaintiff") (citation omitted); Benjamin v. E.I. Du Pont De Nemours & Co., 75 Fed. Appx. 65, 68 (3d Cir. 2003) (seven-year gap substantial); McNally v. Norton, 498 F. Supp. 2d 167, 181 n.14 (D.D.C. 2007) ("To be 'significant' or 'substantial,' the relevant age difference usually must be ten years or more.") (citations omitted).

The Court, as a result, will not dismiss Signal.

7

**IV.     Conclusion**

For the foregoing reasons, the Court will issue a contemporaneous Order that grants in part and denies in part Defendants' Motion. The individuals will be dismissed and Signal will be required to file an answer.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 2, 2014